# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LA-QUN RASHEED WILLIAMS,    )
                          Plaintiff,    )
                                 )
     vs.                      )      Civil Action No. 14-770
                                 )      Chief Magistrate Judge Maureen P. Kelly
LOUIS FOLINO; TRACY SHAWLEY;    )
PAUL PALYA; LT. SHRADER; D.S.F.M.  )
GILLMORE; C/O SUMEY; C/O       )      Re: ECF No. 6
BLANCHER; C/O SMITH *All Sued in*  )
*Their Individual Capacities*; RN NEDRO  )
GREGO *and* IRMA *All sued in Their*  )
*Individual Capacities,*            )
                       Defendants.    )

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiff, La-qun Williams, a prisoner incarcerated at the State Correctional Institution in Greene County, Pennsylvania ("SCI-Greene"), has filed a Complaint (ECF No. 1-2) alleging claims pursuant to 42 U.S.C. § 1983, and pendant state law negligence claims. In particular, Plaintiff alleges: (1) that in response to filing grievances, he suffered retaliation in violation of the First Amendment; (2) the use of excessive force in violation of the Eighth Amendment; (3) inhumane conditions of confinement in violation of the Eighth Amendment; (4) the denial of medical care in violation of the Eighth Amendment; (5) the violation of his right to due process in violation of the Fourteenth Amendment; and, (6) a state law negligence claim related to his conditions of confinement.

Defendants Superintendent Louis Folino, Grievance Coordinator Tracy Shawley, Unit Manager Paul Palya, Lieutenant Shrader, Deputy Superintendent Gilmore, Corrections Officer

Sumey, Corrections Officer Blancher, Corrections Officer Smith, Registered Nurse Supervisor Nedra Grego, and CHCA Irma Vihlidal (identified by Plaintiff as "Irma") have filed a Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (ECF No. 6), contending that the facts alleged in Plaintiff's Complaint fail to state any claims upon which relief may be granted as a matter of law, and seeking the dismissal of Plaintiff's Complaint in its entirety with prejudice.

For the following reasons, Defendants' Motion to Dismiss (ECF No. 6) is granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Grievances

Plaintiff alleges that on November 28, 2012, he sent a DC-135A request slip to Unit Manager Paul Palya expressing his concern about the doors on his cabinet that he contends swing out and have protruding sharp metal edges, causing him a health and safety concern due to his history of seizures. (ECF No. 1-2 ¶15). Plaintiff allegedly sent a copy of that request slip to Deputy Superintendent Gilmore on December 6, 2013, and to Superintendent Louis Folino on December 15, 2013. (ECF No. 1-2 ¶¶16-17).

Plaintiff alleges that he has a history of seizures, including four while incarcerated at SCI-Greene. He knows he had the seizures because he woke up having "pissed and shitted on himself." (ECF No. 1-2 ¶19). He contends he wrote sick-call slips to medical on December 12 and 19, 2013, informing various Defendants of his seizure condition and inquiring as to why he was not receiving his previously prescribed medications. (ECF No. 1-2 ¶20). Because Plaintiff was not seen by a doctor, he filed a grievance on December 24, 2013, requesting medical attention for his seizures which he reported caused him to have "pissed and shitted on himself."

2

(ECF No. 1-2 ¶21). Grievance Coordinator Tracy Shawley rejected the grievance because it used the words "pissed" and "shitted." Superintendent Folino affirmed the rejection, which Plaintiff contends violated Department of Corrections' policy. (ECF No. 1-2 ¶¶22-24). Superintendent Folino, in affirming the dismissal of Grievance 490819, noted that "there are other words more appropriate that you could have used."[1] Chief Grievance Officer Dorina Varner, affirming the rejection, stated, "You had the opportunity to re-submit the initial grievance to correct the words that were determined to be discourteous, however you did not do so." (ECF No. 6-1, pp. 2-8).

Plaintiff alleges that he filed two more grievances on December 24 and 25, 2013, regarding his desire to have the swinging cabinet doors removed and requesting treatment for his seizure disorder, but this grievance was also rejected. (ECF No. 1-2 ¶¶26-27). Grievance 490962 deals with the swinging door, which Plaintiff alleged was a health hazard. Following appeals and a remand, Grievance 490962 was rejected as frivolous because the cabinet doors are standard issue, not considered a health hazard and because Plaintiff's medical records showed no health concerns that would require medication. (ECF No. 6-1, pp. 10-21). Grievance 490963 deals with the same subject matter and was rejected as being duplicative of Grievance 490962. (ECF No. 6-1, pp. 23 – 29).

Plaintiff next alleges that on December 25, 2013, he was retaliated against by Officer Sumey "for the exercise of his First Amendment rights." Plaintiff alleges that during an escort to the shower, rather than use appropriate procedure of "holding Plaintiff by the forearm and dog leash," Officer Sumey grabbed his right arm and left forearm and pulled him out of his cell and pushed or "glided" him toward the shower. (ECF No. 1-2 ¶¶28, 32- 33). As a result, Plaintiff filed an allegation of abuse against Officer Sumey for the incident and against Officer Blancher

---

[1] Defendants have provided the Court with copies of each of the grievances and responses, as well as all misconducts which form the basis of Plaintiff's claims. (ECF No. 6-1).

for refusing him medical treatment. (ECF No. 1-2 ¶29). Plaintiff alleges he was again retaliated against by those two officers and by Officer Smith who refused him time in the law library, for which he also filed a grievance. (ECF No. 1-2 ¶30). Plaintiff alleges he was again retaliated against on January 23, 2014, this time by Lieutenant Shrader, when he issued a misconduct against Plaintiff for filing the allegation of abuse against Officer Sumey, because the allegation was reportedly deemed untruthful. (ECF No. 1-2 ¶31).

Plaintiff filed three grievances in the same time period concerning his ability to use the law library. The first, Grievance 491397, dated January 1, 2014, alleges that Plaintiff was only allowed to bring as many legal materials with him to the law library as he could carry, which he contends violated DOC policy because corrections officers should have carried as many legal materials for him as he wanted. (ECF No. 6-1, pp. 31-39). Plaintiff also stated that he was not receiving six hours a week in the law library, which he contends he was entitled to. Finally, Plaintiff alleges that Officer Sumey told him he would "fuck you over" and another non-defendant officer agreed, because he filed grievances and lawsuits and said "I got some shit for you boy." Grievance 491397 was denied because inmates are allotted two hours per week at the law library, which Plaintiff received, and because Plaintiff refused an offer of extra time at the law library. Plaintiff's grievance was also denied because DOC policy does not require corrections officers to carry additional materials to the law library, and because Officer Sumey denied making the statements and video recordings from a facility camera did not corroborate Plaintiff's version of events. Id.

Plaintiff next filed Grievance 492823, dated January 9, 2014, alleging that a non-defendant corrections officer stated "fuck you you stupid fucker you ain't going to no law library because you filed a grievance." (ECF No. 6-1, pp. 41-42). This grievance was denied as frivolous

because it was not supported by video, the officer denied making the statement, and it appeared

that Plaintiff was not taken to the law library because he covered his cell vent.

Plaintiff also submitted Grievance 493270, dated January 16, 2014, alleging that Officer

Blancher refused him extra law library time when other inmates were given extra time, which

Plaintiff contends was a form of retaliation for filing grievances. This grievance was denied

because he received all the law library time to which he was entitled. (ECF No. 6-1, pp. 43-47).

Plaintiff alleges a claim of retaliation in violation of his First Amendment rights, arising

out of the allegation of abuse against Officer Sumey, which Plaintiff contends led to the the

issuance of a misconduct by Lieutenant Shrader. This misconduct, for lying to an employee,

states:

> Inmate Williams filed an abuse complaint that was assigned to this officer by
> OSII. Inmate Williams was interviewed about his claim of abuse and he stated
> that on 12-25-2013 Officer Sumey assaulted him when he was taking him out of
> his cell for a shower. Observation of video does not support Inmate Williams'
> claim. Staff interviewed admits to grabbing Inmate Williams' shoulders to guide
> him out of the cell but did not abuse Inmate Williams in any manner. The reason
> for the delay in this misconduct being written is due to the ongoing investigation.

(ECF No. 6-1, p. 49). Plaintiff was found guilty of this misconduct, and it was upheld on appeal.

(ECF No. 6-1 pp. 50-61).

## B. Medical Care

On December 23, 2013, Plaintiff contacted RN Supervisor Nedra Grego and CHCA Irma

Vihidal via request slips, and spoke with the staff nurse making rounds, about his medical

condition and his need for seizure medication.  Plaintiff was told to submit a sick call slip. (ECF

No. 1-2 ¶34). In the following days and weeks, Plaintiff repeatedly spoke with the nurse making

rounds about his condition and submitted several sick call slips throughout January 2014 asking

for medical treatment. (ECF No. 1-2 ¶35). Plaintiff contends he told Officer Blancher that he had

a seizure, and alleges that Officer Blancher responded by telling him to submit a sick call slip, which would be provided by the 6-2 shift staff. When Plaintiff asked Defendant Blancher to speak to a sergeant or lieutenant, Defendant Blancher responded by telling Plaintiff to submit a request slip. Plaintiff alleges that this was an attempt by Officer Blancher to intentionally delay necessary medical care. (ECF No. 1-2 ¶¶ 38-40). Plaintiff contends that Defendants Shawley, Folino, Palya, Gilmore, and Blancher denied him medical care by denying him access to a physician. (ECF No. 1-2 ¶41).

During the evening of January 26-27, 2014, Plaintiff allegedly had a seizure and banged his head on the swinging cabinet door, causing him to suffer a laceration and swelling on his forehead. (ECF No. 1-2 ¶42). Plaintiff concedes he was provided medical treatment, but contends he now suffers a twitch to the right side of his head as well as blurry vision, headaches and an aversion to bright light. He attributes all of these symptoms to hitting his head on the sharp metal edge of the cabinet door in her his cell. He alleges that he has a permanent scar on the right side of his face, and that he must wear shaded glasses to block bright light. Plaintiff also states that he must take pain medication for daily headaches. (ECF No. 1-2, ¶¶ 43-48).

### C. Claims

Plaintiff alleges that Defendants owed Plaintiff a duty of care and that, as a result of their negligence, he sustained physical injuries and emotional harm. (ECF No. 1-2, ¶ 51). Plaintiff seeks compensation for his injuries. In particular, Plaintiff seeks an award of "punitive damages" of $4500 for the negligence resulting in a permanent scar, headaches, blurry vision and required glasses he must now wear; $2000 for the failure of various Defendants to respond appropriately to his grievances by providing medical care and by removing the cabinet door in his cells; $300 against other various Defendants for delaying access to medical care; $300 for retaliation against

Plaintiff in violation of his First Amendment rights. (ECF No. 1-2 ¶ 53). In addition, Plaintiff seeks compensatory damages in the amount of $10,000.

In response to the Complaint, Defendants have filed the present Motion to Dismiss in which they argue that (i) Plaintiff's excessive force claim fails as a matter of law because the force alleged was *de minimus*; (ii) Plaintiff's due process claim arising out of the summary rejection of his grievance for the use of inappropriate language fails to state a claim as a matter of law; (iii) Plaintiff fails to state a claim for retaliation as a matter of law based upon the facts alleged in his Complaint; (iv) Plaintiff's Eighth Amendment conditions of confinement claim, arising out of the swinging cabinet doors, fails to state a claim upon which relief may be granted; (v) Plaintiff's Eighth Amendment claims for the denial of access to medical care fail to allege the subjective or objective knowledge of a substantial risk of harm, as required to find deliberate indifference on the part of any named Defendants and therefore fails to state a claim upon which relief may be granted; and, (vi) Defendants Shawley, Folino, Gilmore, Palya, Grego and Vihildal should be dismissed for lack of personal involvement. Plaintiff has filed a brief in opposition to Defendants' Motion to Dismiss (ECF No. 11), as well as copies of Sick Call Slips and additional grievances related to his claims. This matter is ripe for disposition.

## II.   STANDARD OF REVIEW

### A.  Pro Se Litigants

Pro se pleadings such as those drafted by Plaintiff, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity

with pleading requirements. <u>Boag v. MacDougall</u>, 454 U.S. 364 (1982); <u>United States ex rel.</u>

<u>Montgomery v. Bierley</u>, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be

inartfully drawn and should be read "with a measure of tolerance"). Under our liberal pleading

rules, during the initial stages of litigation, a district court should construe all allegations in a

complaint in favor of the complainant. <u>See</u>, <u>e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)

(discussing Fed. R. Civ. P. 12(b)(6) standard). Because Plaintiff is a pro se litigant, this Court

may consider facts and make inferences where it is appropriate.

**B. Motion to Dismiss Pursuant to Rule 12(b)(6)**

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed

to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and

plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the ... claim is and the grounds on which it rests.'" <u>Bell Atlantic</u>

<u>Corp. v. Twombly</u>, 550 U.S. 554, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47

(1957)).

Building upon the landmark United States Supreme Court decisions in <u>Twombly</u> and

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit

explained that a District Court must undertake the following three steps to determine the

sufficiency of a complaint: first, the court must "tak[e] note of the elements a plaintiff must plead

to state a claim." Second, the court should identify allegations that, "because they are no more

than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken

into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike

conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675, 679). The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." Id. at 210–11; see also Malleus, 641 F.3d at 560. This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a motion to dismiss. Fowler, 578 F.3d at 212; see also Guirguis v. Movers Specialty Servs., Inc., 346 F. App'x. 774, 776 (3d Cir. 2009). In short, a motion to dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. Twombly, 550 U.S. at 563, n.8.

In conjunction with their Motion to Dismiss, the parties have provided copies of Plaintiff's underlying grievances as well as relevant sick call slips and misconducts issued against him, and all appeals and related dispositions. Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993). Factual allegations within documents described or identified in the complaint also may be

considered if the plaintiff's claims are based upon those documents. Id. (citations omitted).  In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004); Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir.2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

## III.  DISCUSSION

### A.  Eighth Amendment Excessive Force Claim

Plaintiff alleges that on December 25, 2013, in retaliation for filing grievances regarding the lack of medical care provided for recently suffered seizures, Defendant Sumey, a corrections officer assigned to Plaintiff's housing unit, failed to use a single arm hold and "dog leash" to escort Plaintiff to the shower and, instead, grabbed both Plaintiff's right and left arms as Plaintiff exited his cell.  (ECF No. 1-2, ¶ 28).  Plaintiff alleges that Defendant Sumey then "pulled Plaintiff out of his cell turned him around and pushed him [towards] the shower."   Id.  Plaintiff alleges that he was injured and that Defendants Sumey and Blancher refused to take him for medical treatment. Plaintiff clarifies his allegations and states that "when an inmate leaves out of his cell he must walk backwards towards the c/o which the c/o then holds the inmates and escort his to his destination by holding his forearm and the dog leash.  According to the video footage it clearly shows that this c/o Sumey putting both of his hand on the Plaintiff then admits to grabbing me and gliding me to the shower. If I am being glided anywhere that mean I am being pushed or shoved."  (ECF No. 102, ¶¶ 32-33). Plaintiff provides no information regarding any

injuries allegedly sustained as a result of Defendant Sumey's use of both hands to "grab" Plaintiff and "glide" him toward the shower.

Defendants construe these allegations as attempting to state a claim for the unconstitutional use of excessive force, and seek dismissal of the claim as insufficient as a matter of law. Plaintiff appears to concede that he has not stated an Eighth Amendment claim arising out of this incident, as Plaintiff does not oppose the Motion to Dismiss as to this claim.

The allegations set forth in the Complaint regarding this incident reflect the use of force that does not support a claim of constitutional proportions.  When prison officials are accused of using excessive force, the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Since this analysis entails issues of motivation, such claims often turn on factual disputes which cannot be resolved as a matter of law. Consistent with this fact-bound approach to the litigation of these claims, there are several factual considerations that a court must examine in determining whether a correctional officer has used excessive force including: "(l)'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

However, not "every malevolent touch by a prison guard" violates the Constitution. Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical

force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. (quoting Whitley, 475 U.S. at 327). Thus, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

The extent of injury suffered is a consideration that may be relevant to determining if the force could have plausibly been thought necessary. Id. at 37. "The extent of injury may also provide some indication of the amount of force applied." Id. But to establish an excessive force claim, an inmate does not need to show that he suffered a significant, or even a more than *de minimis* injury. Id. Rather, the central issue is the force used by the officer, not the injury caused by the officer. Flood v. Schaefer, 439 F. App'x 179, 182 (3d Cir.2011).

In applying the foregoing principles, the Court finds that Plaintiff fails to state a claim with respect to the excessive force alleged, if any. He merely asserts that while walking backwards out of his cell he was "grabbed" by both arms and "pushed" or "glided" toward the shower, and fails to allege any resulting injury. This alleged behavior on the part of Defendants, while not condoned by the Court, is not the type of force repugnant to the conscience of mankind. See, e.g., Adderly v. Harry, No. 13-1465, 2014 WL 4829085, at *7-8 (M.D. Pa. Sept. 29, 2014). Accordingly, Defendants' Motion to Dismiss Plaintiff's excessive force claim is granted.

**B. Due Process Claim**

Defendants seek dismissal of Plaintiff's due process claim arising out of the summary denial of Plaintiff's initial grievance seeking medical care. As alleged by Plaintiff, the grievance was rejected because he used inappropriate language to describe bodily functions resulting from a seizure. The Court agrees that to the extent Plaintiff alleges a due process claim related to the

rejection of his grievance, he does not state a cognizable Section 1983 claim. <u>See</u>, <u>Iwanicki v. Pennsylvania Dep't of Corr.</u>, 582 F. App'x 75, 81 (3d Cir. 2014)(violations of grievance procedures do not give rise to a cognizable claim under section 1983); <u>and see</u>, <u>Williams v. Armstrong</u>, 566 F. App'x 106, 109 (3d Cir. 2014) (access to prison grievance procedures is not a constitutionally-mandated right, citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir.2001) (collecting cases and stating that "[t]he courts of appeals that have confronted the issue are in agreement that the existence of a prison grievance procedure confers no liberty interest on a prisoner")). Therefore, any allegations of improprieties in the handling of Plaintiff's grievance do not state a cognizable claim under Section 1983.

### C. First Amendment Retaliation Claim

Defendants seek dismissal of Plaintiff's First Amendment retaliation claims, based upon the absence of a causal link between Plaintiff's purported protected activity in submitting grievances and (i) Defendant Sumey's alleged use of excessive force in "grabbing" Plaintiff and "gliding" him toward a shower; (ii) the issuance of a misconduct violation after Plaintiff filed a charge accusing Defendant Sumey of abuse for the incident; and, (iii) the denial of law library time by Defendants Sumey, Blancher and Officer Smith.

To state a prima facie claim of retaliation under the First Amendment, Plaintiff must allege that (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. <u>Rauser v. Horn</u>, 241 F.3d 330, 333–34 (3d Cir. 2001).

In determining whether the facts alleged state a cognizable claim, the mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive,

for the purpose of establishing a causal link between the filing of a grievance and the allegedly retaliatory conduct. See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005). Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997). The United States Court of Appeals for the Third Circuit instructs district courts to "be diligent in enforcing these causation requirements" in recognition of the fact that public actors "must make a large number of decision in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actor's decision." Lauren W. v. DeFlaminis, 480 F.3d 259, 267–68 (3d Cir. 2007).

Once Plaintiff has alleged a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

With regard to Plaintiff's allegations, the filing of grievances is protected activity under the First Amendment. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373–74 (3d Cir. 1981). Therefore, the first prong of Rauser, i.e., that the prisoner be engaged in a constitutionally protected activity, has been arguably satisfied.

The second prong is satisfied if a prisoner alleges facts which would establish that he "suffered some 'adverse action' at the hands of prison officials." Allah v. Seiverling, 229 F.3d

220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). In this case, Plaintiff has alleged that he was repeatedly threatened, and was told that his law library time was limited and the misconduct was filed as a result of his many grievances. (ECF No. 1-2, ¶¶28-32). Defendants contend that Plaintiff fails to allege sufficient "adverse action," because the physical contact underlying his claim is *de minimus* and not independently actionable, and because he was offered as much library time as he was entitled to receive. Further, as to the third prong, Defendants argue that Plaintiff cannot establish causation because Plaintiff was found guilty of the misconduct related to filing an erroneous abuse charge.

At this early stage of the litigation, and in the absence of discovery related to Plaintiff's claims, the assertion of mistreatment related to Plaintiff's filing of grievances arguably is sufficient to support a retaliation claim. Therefore, Defendants' Motion to Dismiss as to Plaintiff's retaliation claims is denied.

### D. Conditions of Confinement

Defendants seek the dismissal of Plaintiff's claim that the condition of the swinging doors on his cell cabinet constitutes a violation of his Eighth Amendment rights. The Court notes that Plaintiff's claim related to the cabinet doors is stated as a negligence claim, but in an abundance of caution, the Court will consider the claim in light of the Eighth Amendment.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Prison conditions may amount to cruel

and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." <u>Tillman v. Lebanon Cnty. Corr. Fac.</u>, 221 F.3d 410, 418 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have stressed that the duration of the Plaintiff's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. <u>Hinterlong v. Hill</u>, 2006 WL 2303106 * 5–6 (E.D. Pa. August 8, 2006); <u>Nami v. Fauver</u>, 82 F.3d 63, 67 (3d Cir. 1996). Moreover, the focus must be on the deprivation of a particular basic necessity.

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

<u>Wilson v. Seiter</u>, 501 U.S. 294, 304–05 (1991).

In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." <u>Id.</u> at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known, objectively serious risk to a prisoner's health or safety. <u>See</u> <u>Farmer</u>, 511 U.S. at 837; <u>Beers–Capitol v. Whetzel</u>, 256 F.3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

Here, exposure to swinging cabinet doors with protruding metal simply does not state a claim for the deprivation of the "minimal civilized measure of life's necessities" sufficient to support the basis of an Eighth Amendment violation. Plaintiff correctly states this claim in negligence, as the condition of the cabinet doors simply does not rise to constitutional proportions. Franco–Calzada v. U.S., 375 F. App'x 217, 220 (3d Cir. 2010)(complaint properly dismissed where injuries sustained by prisoner from cell ladder known by prison officials to have caused prior falls asserted a simple negligence claim at most, and thus, failed to state a claim of a constitutional violation under the Eighth Amendment). Accordingly, Defendants' Motion to Dismiss Plaintiff's Eighth Amendment conditions of confinement claim is granted.

**E. Denial of Medical Care**

Defendants seek dismissal of Plaintiff's claim regarding the ongoing denial of medical care for his seizure disorder, based upon the assertion that none of the Defendant corrections officers and personnel were aware of a substantial risk of harm to Plaintiff if medical care was denied.

Plaintiff alleges that various officials at SCI-Greene refused to provide him with necessary medical care with regard to his seizure disorder, even after repeatedly reporting that he was currently suffering from seizures. In particular, Plaintiff alleges that on December 12 and 19, 2013, he wrote to the medical office requesting seizure medication. After not being seen by a doctor, on December 29, 2013, Plaintiff filed a grievance and disclosed that he had experienced seizures resulting in a loss of control over bodily functions. (ECF No. 1-2, ¶¶ 19-22). Plaintiff alleges that Defendant Shawley rejected the grievance due to Plaintiff's use of inappropriate language. This result was affirmed by Defendant Folino. Plaintiff alleges that despite disclosing in the grievance that he had suffered a seizure and needed medical attention, neither Defendant

Shawley nor Defendant Folino referred him for medical treatment. (ECF No. 1-2, ¶¶ 24, 25).

Plaintiff alleges that he submitted at least one sick call slip to Defendant Grego, a nurse, and

Defendant "Irma" (identified by Defendants as Irma Vihlidal), and repeatedly asked the sick call

nurse for medical attention, to no avail.  (ECF No. 1-2, ¶¶ 34-36).  Plaintiff alleges that after

suffering a seizure in late January 2014, he spoke with Defendant Blancher and requested

medical attention and a sick call slip, but neither was provided to him, (ECF No. 1-2, ¶¶ 38-39).

A refusal to provide medical care to a prisoner violates the Eighth Amendment's

prohibition of "cruel and unusual punishment." U.S. Const. amend. VIII. "Regardless of how

evidenced," whether "manifested by prison doctors in their response to the prisoner's need or by

prison guards in intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed," "deliberate indifference to a prisoner's serious

illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 104–05

(1976). "The Estelle standard requires deliberate indifference on the part of the prison officials

and it requires the prisoner's medical needs to be serious." Spruill v. Gillis, 372 F.3d 218, 235-

236 (3d Cir. 2004). The Estelle standard is met when 1) a doctor is "intentionally inflicting pain

on [a] prisoner," 2) "prison authorities deny reasonable requests for medical treatment ... and

such denial exposes the inmate to undue suffering or the threat of tangible residual injury," or 3)

"knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide

that care." Id. at 235.

Plaintiff's claims are sufficient to state a claim for deliberate indifference of a serious

medical condition.  Plaintiff alleges that he communicated his need for seizure medication to

each of the identified Defendants and that he disclosed, in graphic terms, that he had suffered a

seizure serious enough to result in the loss of bodily functions.  Yet, Plaintiff alleges that none of

the identified Defendants took the necessary steps to provide the required medical attention or the requested preventative seizure medication. Given the obviousness of the threat of injury or suffering caused by debilitating seizures to medical and non-medical personnel, Plaintiff's allegations satisfy Estelle, and Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim for the denial and/or delay of medical care is denied.

**F. Personal Involvement**

Defendants seeks dismissal of the Complaint against Defendants Shawley, Folino, Gilmore, Palya, Grego and Vihildal, asserting that Plaintiff's claims against them amount to nothing more than the failure to respond to grievances and/or request slips. Accordingly, Defendants contend that because the Complaint fails to allege any facts showing that those individuals were personally involved in any constitutional misconduct, they are entitled to entry of dismissal. (ECF No. 7, p. 15).

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). See Ruff v. Health Care Adm 'r, 441 F. App'x 843, 846 (3d Cir. 2011) (per curiam ) ("[t]o be liable under § 1983, a defendant must have some personal involvement in the underlying unconstitutional conduct"). See also Kaucher v. County of Bucks, 455 F.3d 418, 432 n. 7 (3d Cir. 2006), quoting Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005) ("[i]n order to prevail on a § 1983 claim against multiple

defendants, a plaintiff must show that each individual defendant violated his constitutional rights").

At this stage of the litigation, and as set forth with regard to this Court's disposition of Defendant's Motion to Dismiss Plaintiff's Eighth Amendment claim for the denial and/or delay of medical care, Plaintiff has specifically and sufficiently alleged the involvement, knowledge and/or acquiescence of Defendants Folino, Shawley, Blancher, Grego and Vihildal. Accordingly, Defendants' Motion to Dismiss for lack of personal involvement as to each of these Defendants is denied.

Plaintiff's claims against Defendants Gilmore and Palya relate solely to the alleged refusal or failure to remove the swinging cabinet doors, as requested by Plaintiff in his initial grievances. (ECF No. 1-2, ¶¶ 15-17). This Court has determined that Plaintiff does not state a claim for a constitutional violation related to his cell cabinet doors. However, at this stage of the proceeding, it is not clear whether Plaintiff states a viable state law claim in negligence that falls within one of the statutory exceptions to Pennsylvania's sovereign immunity for claims against state agencies. Accordingly, Defendants' Motion to Dismiss as to Defendants Gilmore and Palya is also denied.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss [ECF No. 6] is GRANTED IN PART and DENIED IN PART. An appropriate Order follows.

### ORDER

AND NOW, this 17th day of March 2015, upon consideration of Defendants' Motion to Dismiss (ECF No. 6), and Plaintiff's Brief in Opposition to Motion to Dismiss (ECF No. 11),

and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that Defendants' Motion is GRANTED IN PART and DENIED IN PART as follows:

1. IT IS ORDERED that Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim for the alleged excessive use of force is GRANTED;

2. IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's claim for alleged unconstitutional conditions of confinement is GRANTED,

3. IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim for the alleged denial of due process is GRANTED;

4. IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's claims for retaliation in violation of Plaintiff's First Amendment rights is DENIED;

5. IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's claims for the alleged unconstitutional denial or delay of required medical treatment in violation of the Eighth Amendment is DENIED; and

6. IT IS FURTHER ORDERED that Defendants' Motion to Dismiss all claims asserted against Defendants Shawley, Folino, Grego and Vihildal, Gilmore and Payla is DENIED.

Pursuant to Rule 4 of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of

appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District

Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.


BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: March 17, 2015

cc:    All counsel of record by Notice of Electronic Filing

       La-Qun Rasheed Williams
       DG-2056
       SCI Greene
       Waynesburg, PA 15370